**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LUZ S.,[1] | ) | |
| *Plaintiff*, | ) | 3:25-cv-00236 (SVN) |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| *Defendant*. | ) | March 31, 2026 |
| | ) | |

**RULING ON PLAINTIFF'S MOTION TO REVERSE OR REMAND AND DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER**

Sarala V. Nagala, United States District Judge.

Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act, alleging a disability beginning February 15, 2021. Tr., ECF No. 13 at 21. Plaintiff appeals the decision of an Administrative Law Judge ("ALJ") finding that she has not been disabled during the relevant period. Specifically, Plaintiff argues that the ALJ erred in his Residual Functional Capacity ("RFC") analysis by not properly weighing the medical opinion of Plaintiff's therapist, Elaine Tavani. The Commissioner moves for affirmance of the ALJ's decision. For the following reasons, Plaintiff's motion to reverse, or in the alternative, remand, is DENIED, and the Commissioner's motion to affirm the decision of the Commissioner is GRANTED.

**I.    BACKGROUND**

The Court will assume the parties' familiarity with Plaintiff's medical history, as summarized in her motion, ECF No. 17-1 at 3–6, which the Commissioner adopts and supplements, ECF No. 27-1 at 2–5, and which the Court adopts and incorporates by reference.

---

[1] In opinions issued in cases filed pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), this Court will identify and reference any non-government party solely by first name and last initial, in order to protect the privacy interest of social security litigants while maintaining public access to judicial records. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

The Court will also assume familiarity with the five sequential steps used in the analysis of disability claims, the ALJ's opinion, and the record. The Court will only cite portions of the record and the legal standards necessary to explain its decision.

## II.    STANDARD OF REVIEW

It is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See, e.g.*, *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (*per curiam*); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "If there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (internal quotation marks and citation omitted). Put another way, "once an ALJ finds facts," a court may "reject those facts 'only if a reasonable factfinder would *have to conclude otherwise.*'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

## III.    DISCUSSION

Plaintiff's challenge to the ALJ's decision rests entirely on one ground: that the ALJ, when determining Plaintiff's residual functional capacity ("RFC"), erred by finding the opinion of Licensed Marriage and Family Therapist Elaine Tavani unpersuasive. *See* Pl.'s Br., ECF No. 17-1 at 6. Specifically, Plaintiff challenges the ALJ's determination that Tavani's opinion was not supportable. *Id.* at 8 ("Plaintiff argues that the error in the opinion evaluation lies in the

2

supportability factor analysis."). Plaintiff argues that this error alone renders the ALJ's determination without substantial evidence. Accordingly, Plaintiff has waived any argument as to other aspects of the ALJ's decision. *See Vilardi v. Astrue*, 447 F. App'x 271, 272 n.2 (2d Cir. 2012) (summary order) (holding that issues not raised on appeal are deemed waived). Thus, the Court focuses its inquiry solely on the ground challenged by Plaintiff and holds that the ALJ did not err in his evaluation.

The ALJ determined at step two of the sequential evaluation process that Plaintiff has the following "severe impairments" under 20 CFR § 404.1520(c): "major depressive disorder, post-traumatic stress disorder, adjustment disorder, generalized anxiety disorder, social anxiety disorder, and left vision loss." Tr. at 24. At step three, the ALJ determined that neither Plaintiff's vision loss nor her mental health conditions rendered her *per se* disabled. *Id.* at 24–26 (finding that Plaintiff's vision loss did not meet the criteria of a "listed impairment" and that Plaintiff's mental impairments created only "moderate limitation[s]" in four broad areas of functioning). He thus proceeded to step three of the sequential analysis: determining Plaintiff's "residual functional capacity." 20 C.F.R. § 404.1505(a).

In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources. *See* 20 C.F.R. § 404.1545(a)(3). It is within the ALJ's discretion to resolve genuine conflicts in the evidence. *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the [Commissioner], and not this court, to weigh the conflicting evidence in the record."); *Henderson v. O'Malley*, No. 23-712-CV, 2024 WL 1270768, at *2 (2d Cir. 2024) (summary order). As a result, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the

3

record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).

An ALJ is charged with evaluating a number of factors in determining the weight to give a medical opinion. *Id.* § 404.1520c(b). The two most important factors are the opinion's consistency and the opinion's supportability. *Id.* § 404.1520c(b)(2). In terms of supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). As for consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

In determining Plaintiff's RFC, the ALJ found that Plaintiff could perform medium work with certain limitations that were based on her lack of vision in her left eye and her various mental limitations. *See* Tr. at 26–27. In pertinent part, the ALJ found Plaintiff's RFC as follows:

> The claimant is capable of performing simple, routine tasks, and maintaining attention, concentration, persistence or pace to stay on task for two-hour periods during a normal eight-hour day, as required to perform such tasks. She requires a low stress work setting, which is further defined as work that is not production pace or quota based, rather a goal-oriented job primarily dealing with things as opposed to people, and she can tolerate no more than occasional interaction with the public, supervisors and co-workers, with no work with the public as a component of the job, such as cashier, sales or negotiations. However, incidental/casual contact is not precluded.

*Id.* at 27. In reaching this conclusion, the ALJ considered seven medical opinions, including Ms. Tavani's, and found four of them persuasive. *Id.* at 30–33. He found Ms. Tavani's opinion to be of "little persuasiveness," but noted her observations of Plaintiff's mental limitations. *Id.* at 31.

4

The Court concludes that the ALJ properly considered the supportability of Ms. Tavani's opinion, and Plaintiff has not sustained her burden of showing that a more restrictive RFC was necessary.

The ALJ noted that Ms. Tavani's opinion was in the form of an "undated and unsigned assessment," and summarized the medical opinions as follows:  Plaintiff "would have poor abilities in the areas of dealing with work stress, independent functioning, and maintaining attention and concentration, as well as in her ability to follow complex job instructions, behave in an emotionally stable manner, or relate predictabl[ly] in social situations . . . would have a 'fair' ability to deal with the public, follow detailed and simple job instructions, and maintain personal appearance, as well as to demonstrate reliability, and that she would have a 'good' ability to follow work rules, relate to coworkers, use judgment, and interact with supervisors." Tr. at 30–31 (analyzing opinion at Tr. 805–809).  The ALJ then explained that Ms. Tavani's opinion was unpersuasive because "most of the support provided by Ms. Tavani, despite her assessing the claimant with PTSD with depersonalization, is supported more by descriptions of the effects of the claimant's eye pain, unemployment, and lack of financial resources on her mental health, and that it is based on only eight visits over a two-month period." Tr. at 31.  The ALJ also noted that Ms. Tavani did not define the terms "good," "fair," or "poor," in vocationally relevant terms, nor explain in "such terms how [Plaintiff's] mental impairments would affect her ability to meet the demands of competitive, remunerative, unskilled work." *Id.*  The ALJ did, however, note Ms. Tavani's "observations of [Plaintiff] as having difficulty regulating her emotions and with concentration, and f[ound] her assessment overall consistent with the record." *Id.*

The supportability factor considers the degree to which a source provides objective medical evidence and explanations to support her opinion.  20 C.F.R. § 404.1520c(c)(1).  The Court finds that the ALJ reasonably assessed Ms. Tavani's opinion as having little persuasive value.

First, the ALJ noted that the opinion was undated.[2]  The opinion stated that Ms. Tavani had known Plaintiff "since 8/9/21" and had seen her "8 times over 2 month period."  Tr. at 806.  During the hearing, Plaintiff's counsel confirmed that there are no treatment records relating to Ms. Tavani's treatment of Plaintiff.  Tr. at 80–82.  Moreover, there were few, if any, mental health treatment records from the 2021 timeframe, as Plaintiff's medical care had been focused on eye care issues around that time period, according to her counsel.  *Id.* at 76, 78.  Without being able to place Ms. Tavani's opinion about Plaintiff's mental limitations in the temporal sequence of the other evidence in the record—and without the benefit of Ms. Tavani's treatment records—it was understandably difficult for the ALJ to assess whether Ms. Tavani's explanations for her opinions were supported by *any* objective medical evidence, including the medical evidence in the record from around the same period of time.

Second, the ALJ correctly assessed that Ms. Tavani's opinion relied heavily on the situational effects of Plaintiff's health issues, including that she had "not received unemployment yet, impacting her ability to pay rent and bills," and that Plaintiff "now faces financial instability and soon homelessness."  *Id.* at 31, 806, 808.  Additionally, the ALJ properly recognized that the basis for several of Ms. Tavani's opinions was Plaintiff's physical eye pain, rather than mental health limitations.  *Id.* at 31; 808 ("Client has constant pain and pressure in her eye.  She also has frequent headaches.  The pain makes her unable to do much more than simple job instructions . . . Some sessions are shorter because of pain, eye sensitivity, and eye tearing that made it difficult to concentrate and keep eyes open."); 809 ("Client has significant impairment with attention and concentration due to eye pain and constant pressure in eye.").  The ALJ was correct in affording Ms. Tavani's opinion less persuasive value with respect to Plaintiff's mental limitations because

---

[2] The opinion was also unsigned, but neither party contests its authenticity.  *See* Tr. at 809.

Ms. Tavani's explanations for her opinions stemmed largely from Plaintiff's physical eye pain.  At the same time, however, the ALJ credited Ms. Tavani's assessment that Plaintiff had difficulty regulating her emotions and with concentration—which the ALJ considered in fashioning Plaintiff's RFC—and found her assessment "overall consistent with the record."  *Id.* at 31.  Thus, while the ALJ did not find Ms. Tavani's opinion thoroughly persuasive, he did acknowledge the deficiencies she identified in Plaintiff's ability to function in a workplace setting and used those in formulating Plaintiff's RFC, which was appropriate.

Finally, the ALJ conducted a thorough review of the medical evidence in the record concerning Plaintiff's mental limitations, which supported his RFC finding.  The ALJ is required to formulate the RFC based on all relevant evidence in the record.  *See* 20 C.F.R. § 404.1545(a); *see also Morales v. Berryhill*, 484 F. Supp. 3d 130, 145 (S.D.N.Y. 2020) ("The RFC is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.") (citation omitted).  He did so here.  *See* Tr. at 29–31 (reviewing Ms. Tavani's report; a consultative examination in November of 2021; an emergency department visit in August of 2022 and the results of follow-up appointments demonstrating continued anxiety and depression; an emergency department visit in October of 2023 for suicidal ideation, after which Plaintiff was discharged based on a showing of improvement with treatment; and a February 2024 exam by a mental health professional noting that Plaintiff's anxiety and panic attacks lingered, but her mental health was improving, that her mood was balanced, that she had "no problems" with focus); *see also* Tr. at 1156–57.  Based on this review, the ALJ concluded that Plaintiff was "capable of performing simple, routine tasks, and maintaining attention, concentration, persistence or pace to stay on task for two-hour periods during a normal eight-hour day, in a non-production pace or quota, . . . with no more than occasional interaction with the public, supervisors and co-

workers and no work with the public except for incidental or casual contact." Tr. at 30.  In making his assessment, the ALJ did not err in his consideration of the supportability of Ms. Tavani's opinion, along with other evidence in the record.  And the Court cannot find that this RFC determination was unsupported by substantial evidence.

To the extent Plaintiff believes a more restrictive RFC was appropriate, it is her burden to demonstrate as much, and she has not offered any alternative formulation.  *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order); *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (recognizing that the claimant has the burden of proving her case at steps one through four, including the RFC determination).

In sum, the ALJ's RFC determination is supported by substantial evidence, and his finding that Ms. Tavani's opinion was not fully persuasive was not reversible error.[3]

## IV.    CONCLUSION

For the reasons described herein, Plaintiff's motion to reverse or remand is DENIED and Defendant's motion to affirm the Commissioner's decision is GRANTED.  The Clerk is directed to enter judgment for Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 31st day of March, 2026.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

---

[3] In so holding, the Court notes that the ALJ's conclusion that Ms. Tavani's opinions that Plaintiff's abilities in various respects were "good," "fair," or "poor," were not expressed in "vocationally relevant terms" was not a basis to discount her opinion.  First, it appears Ms. Tavani used a form sent to her by the State of Connecticut's Department of Aging and Disability Services; thus, she can hardly be faulted for using the categories and checkboxes that the State's form specifically employed.  *See* Tr. at 805–09.  Additionally, medical opinions "need not be reduced to any particular formula."  *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds as stated in Selian*, 709 F.3d at 421.  While use of general terms like "moderate" and "mild" may not support a medical opinion absent additional information, Ms. Tavani did include some justification for her ratings in her opinion, so they were not impermissibly vague.  *See id; see also* Tr. at 808–09.